**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| Sellathurai ("Ganesh") Sriganesha and Sangeetha Sriganesha,<br><br>Plaintiffs,<br><br>v.<br><br>City of Milton, Georgia; and Jason Griffin, in his individual capacity,<br><br>Defendants. | Case No.:<br>1:26-cv-4820 |

**Brief in Support of Defendants' Motion to Dismiss**

No one has a constitutional right to see another person arrested. That's this case. Plaintiffs want damages because Chief Griffin didn't help extradite a former neighbor on an outstanding warrant for property offenses, and because the Milton Police Department (MPD) wouldn't reopen a matter the district attorney had already declined to prosecute, even after Plaintiffs later won a civil judgment against her. They have no standing to bring that claim. Without standing, this Court has no jurisdiction. Even if it did, Chief Griffin gets qualified immunity for a discretionary call about whom to pursue and how. And even if he didn't, *Monell* limits the City's liability to its own policy. None is pled here.

Defendants City of Milton, Georgia and Jason Griffin move to dismiss on three independent grounds. First, under Federal Rule of Civil Procedure

12(b)(1), Plaintiffs lack Article III standing to bring either count, because both rest on the same non-prosecution injury the Eleventh Circuit rejected weeks before this suit was filed in *Peden v. Stephens*.[1] Second, under Rule 12(b)(6), Chief Griffin is entitled to qualified immunity on Count I. Third, under Rule 12(b)(6), the City cannot be liable on Count II under any *Monell* theory. The Court should resolve standing first, because it is jurisdictional and potentially dispositive of the entire case.[2]

**Statement of the Case**

On March 10, 2023, Fisher told an MPD officer that Plaintiffs were "Indians on a work visa," had a "heavy accent," and had only recently obtained citizenship. None of that was true. Plaintiffs are United States citizens.[3] MPD authorized a civil standby for Fisher's proposed tree-cutting, and on March 15, 2023, Fisher, Dennis Guaracino, and a tree crew cut damaged Plaintiffs' trees, Mr. Sriganesha's truck, and the children's basketball backstop netting over roughly six hours.[4] Defendant Jason Griffin was a Captain and Uniform Patrol Commander during this period; he did not become Chief of Police until December 2023.[5] Then-Chief Austin's department reviewed the matter "from both an internal affairs and a criminal investigations perspective," and after a

---

[1] --- F.4th ----, 2026 WL 2420934 (11th Cir. Aug. 19, 2026).
[2] *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998).
[3] Doc. 1 ¶ 12.
[4] Doc. 1 ¶ 13.
[5] Doc. 1 ¶ 11.

meeting with the Fulton County District Attorney's Office, prosecution was declined because "the matter was viewed as civil."[6]

The only conduct Griffin personally took in 2023 was a single act: at a late-May 2023 meeting, he declined to release Fisher's date of birth for Plaintiffs' planned citizen-warrant application, on the stated ground that Fisher could sue the City.[7]

The live conduct is newer. On January 13, 2025, a Fulton County magistrate issued a warrant against Fisher for Criminal Damage to Property in the Second Degree, a felony.[8] The next day, Plaintiff Ganesh Sriganesha asked Chief Griffin directly for help locating and executing it.[9] On January 15, Griffin personally responded from his City email account: the warrant was entered in NCIC, but its existing parameters did not authorize interstate extradition, and coordinating with Florida law enforcement would be "fruitless at this point."[10] Griffin also stated, incorrectly, that Fisher herself had told an MPD officer she had moved to Florida; a week later, unprompted, he corrected the record in writing and apologized.[11]

On December 29, 2025, the State Court of Fulton County entered judgment for Plaintiffs against Fisher, Guaracino, and Emergency Tree USA,

---

[6] Doc. 1 ¶ 22.
[7] Doc. 1 ¶¶ 18, 45.
[8] Doc. 1 ¶ 27; O.C.G.A. § 16-7-23.
[9] Doc. 1 ¶ 28.
[10] Doc. 1 ¶ 28.
[11] Doc. 1 ¶ 29.

LLC, with findings of willful, malicious, and wanton conduct.[12] Plaintiffs returned to MPD and the City with that judgment. On February 11, 2026, Plaintiffs, through counsel, renewed their request directly to Chief Griffin.[13] On March 30, April 17, and April 28, 2026, outside counsel for MPD responded in writing, ultimately stating that the City would not open a criminal investigation or pursue charges, and calling the April 17 response "the City of Milton's final position on this issue."[14] Nothing pled attributes authorship of any of that correspondence to Griffin personally.[15]

Plaintiffs had counsel at least as late as their February 11, 2026 renewal, and outside counsel for the City was still corresponding with that same counsel as late as March 30, 2026.[16] Five months later, the Complaint filed on August 25, 2026 is signed by both Plaintiffs pro se, with no attorney on it.

From that record, Plaintiffs plead two counts under 42 U.S.C. § 1983: Count I, an individual-capacity Equal Protection claim against Griffin based on his January 2025 conduct and his alleged, information-and-belief participation in the 2026 disposition;[17] and Count II, a *Monell* claim against the City, pled in the alternative on three theories: ratification, a final-policymaker decision, and settled custom.[18]

---

[12] Doc. 1 ¶ 30.
[13] Doc. 1 ¶ 32.
[14] Doc. 1 ¶¶ 32-33.
[15] Doc. 1 ¶¶ 32, 34.
[16] Doc. 1 ¶ 32.
[17] Doc. 1 ¶¶ 41-50.
[18] Doc. 1 ¶¶ 51-58.

## Standard of Review

Article III standing is jurisdictional, and a court must resolve it before reaching the merits.[19] Where, as here, a standing challenge is facial rather than factual, the Court accepts the Complaint's well-pled allegations as true, exactly as it would on a Rule 12(b)(6) motion, and asks whether those allegations establish an injury the federal courts may redress.[20] To survive Rule 12(b)(6), a complaint must plead facts that plausibly show entitlement to relief, not mere conclusions.[21] Qualified immunity is immunity from suit, not merely from liability, and should be resolved at the earliest possible stage.[22] And a municipality cannot be held liable under Section 1983 on a theory of respondeat superior; liability attaches only when the municipality's own policy, custom, ratification, or a final policymaker's decision is the moving force behind the violation.[23]

One further point bears on how much benefit of the doubt this pleading needs. Pro se complaints are ordinarily construed liberally.[24] That doctrine exists for unrepresented litigants navigating unfamiliar procedure. This Complaint correctly cites and applies *Iqbal*, *Twombly*, *Monell*, *Pembaur*,

[19] *Steel Co.*, 523 U.S. at 94-95.
[20] *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).
[21] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
[22] *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).
[23] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-94 (1978); *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).
[24] *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

*Praprotnik*, *Garvie*, and *Lewis v. City of Union City*, and it pre-emptively disclaims nearly every argument a defense lawyer would reach for first.[25] And Plaintiffs had counsel as recently as five months before filing.[26] This is not the case *Haines* was written for.

## Argument and Citation of Authorities

### 1. Plaintiffs lack Article III standing to challenge Fisher's non-prosecution, and this Court therefore lacks subject-matter jurisdiction over both counts.

A private citizen has no judicially cognizable interest in the prosecution or non-prosecution of another person, even when the citizen is the victim.[27] *Linda R.S.* established that rule decades ago, and the Eleventh Circuit applied it again just weeks before Plaintiffs filed this suit. In *Peden*, the plaintiff alleged that a county administrator improperly influenced a district attorney's decision not to prosecute the administrator's wife, and recast that as "quite literally, a failure of equal protection under the law."[28] The panel did not reach the merits of that framing. It held the plaintiff lacked standing to bring the claim at all, vacated a merits-based summary judgment, and remanded with instructions to dismiss the claim without prejudice for lack of standing.[29]

Strip the equal-protection label away, and Count I is the same claim: Griffin's handling of the request to locate and extradite Fisher on her

---

[25] See, e.g., Doc. 1 ¶¶ 1, 3, 39, 47-48.
[26] Doc. 1 ¶ 32.
[27] *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *Leeke v. Timmerman*, 454 U.S. 83, 86-87 (1981); *Peden*, 2026 WL 2420934 (11th Cir. Aug. 19, 2026).
[28] *Peden*, 2026 WL 2420934.
[29] *Id.*

outstanding warrant, and his alleged role in the 2026 decision not to reopen the matter or pursue charges. Paragraph 47 insists Plaintiffs are not asking the Court to compel a particular investigation, arrest, extradition, or prosecution; it says they are only challenging how "otherwise available police protection, investigative attention, or discretionary assistance" was "allocated."[30] That is the same recharacterization *Peden* rejected. The injury Plaintiffs identify, at every turn, is that Fisher was not pursued as aggressively as they wanted. Under *Linda R.S.*, *Leeke*, and *Peden*, that is not an injury the federal courts recognize as conferring standing, whatever motive is alleged behind the non-pursuit.

Count II rises or falls with Count I. The City's *Monell* exposure is entirely derivative of the same underlying injury theory; if Plaintiffs lack standing to bring this claim against Griffin, they lack standing to bring it against the City as well.

### 1.1 *Wright v. City of Ozark* does not save this Complaint.

Plaintiffs' standing argument rests on *Wright v. City of Ozark*.[31] *Wright* lets a person sue over the discriminatory allocation of police protection to herself (for example, a woman denied help with a domestic-violence complaint because of her sex). That is a different claim from a claim about whether the government pursued someone else. Plaintiffs are not bringing that kind of claim.

---

[30] Doc. 1 ¶ 47.
[31] 715 F.2d 1513, 1516 (11th Cir. 1983).

But look at the decisions Plaintiffs actually ask the Court to review: Griffin's response to the request for interstate extradition on Fisher's warrant, and MPD's decision not to reopen the matter and file charges against her. Both are decisions about whether to investigate, arrest, or prosecute one identified person, Fisher, for one identified act. That is not a claim that Plaintiffs were denied protection. It is a claim that Fisher was not prosecuted aggressively enough. The Supreme Court rejected that kind of claim decades ago in *Linda R.S.*, and the Eleventh Circuit applied the same rule again this year in *Peden*. Calling the claim an equal-protection claim, and pointing to a comparator, does not change what Plaintiffs are actually asking the Court to decide: whether Fisher should have been pursued harder. That request belongs to Fisher's prosecution, not to Plaintiffs' own protection, whatever label is put on it.

The extradition request is not even the kind of discretionary service *Wright* addresses. Griffin's own January 15, 2025 email explained why he could not do more: the warrant's own parameters, set when Fulton County issued it, did not authorize interstate extradition, and coordinating with Florida law enforcement under those parameters would be "fruitless at this point."[32] That limitation comes from the warrant itself, not from any choice Griffin or MPD made about whom to help. No one, whoever they were, could have received

---

[32] Doc. 1 ¶ 28.

interstate extradition assistance MPD had no authority to give. There is nothing to allocate unequally when nothing was available to allocate in the first place.

Even taking Paragraph 47 on its own terms, the same problem defeats it: there was no service available to allocate unequally. No one, including Plaintiffs, could have received interstate extradition assistance MPD had no authority to give. And no one, including Plaintiffs, received a reopened criminal investigation into conduct the District Attorney had already reviewed and declined to prosecute; that decision belongs to the District Attorney, not to MPD.[33] *Wright* requires an actual service, granted to someone and withheld from another because of race. Plaintiffs do not identify one.

The Complaint's own citations show the same gap. Paragraphs 3 and 47 discuss *Castle Rock* and *DeShaney*, cases about the substantive limits on a government's duty to protect, which is a merits question under Rule 12(b)(6).[34] Neither paragraph mentions *Linda R.S.* or *Leeke*, the cases that actually decide whether a private citizen has standing to complain about someone else's prosecution. That is the same standing problem *Linda R.S.* and *Leeke* resolved decades ago, and that the Eleventh Circuit applied again in *Peden*, one week before Plaintiffs filed this case. The Complaint does not address either line of authority.

---

[33] Doc. 1 ¶ 22.
[34] Doc. 1 ¶¶ 3, 47.

The Court should dismiss both counts without prejudice for lack of subject-matter jurisdiction.[35]

**2. Even if this Court reaches Count I, Chief Griffin is entitled to qualified immunity.**

Qualified immunity shields Griffin unless Plaintiffs plausibly plead that he, personally, violated a clearly established constitutional right.[36] They cannot.

**2.1 There is no comparator for the only timely conduct at issue.**

Selective enforcement requires a comparator similarly situated in all material respects.[37] For the only conduct that is actually timely, Griffin's January 2025 extradition response and the 2026 non-reopening decision, the Complaint alleges no comparator at all. Fisher is the only person in this record who ever generated an out-of-state warrant-enforcement question, because she is the only one who left Georgia; Guaracino remained a Georgia resident throughout.[38] There is no second instance to compare her treatment against.

Paragraph 43 does not supply that comparator. It points to a different officer's handling of an unrelated recording complaint, eleven days after an unrelated arrest, in August 2023.[39] Plaintiffs plead it, and the surrounding history in Paragraphs 12 through 25, as background evidence bearing on the significance of Griffin's later, timely conduct, not as an independent claim or as

[35] *Stalley*, 524 F.3d at 1232.
[36] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Iqbal*, 556 U.S. at 676.
[37] *Lewis v. City of Union City*, 918 F.3d 1213, 1224–28 (11th Cir. 2019) (en banc).
[38] Doc. 1 ¶ 36.
[39] Doc. 1 ¶ 43.

proof that every officer shared Fisher's bias.[40] That characterization is the correct one, because the incident cannot reach Griffin: there is no allegation that he knew of it, reviewed it, or shared whatever motivated it. Background evidence that cannot be tied to the decisionmaker supplies no comparator, and no purpose element, for that decisionmaker's decision.

### 2.2 Nothing pled shows Griffin personally acted with discriminatory purpose.

Individual-capacity liability requires personal participation and personal discriminatory purpose; institutional pattern evidence does not transfer to Griffin automatically.[41] Even if the Court credits Plaintiffs' theory that Griffin's 2023 explanation for withholding Fisher's date of birth was pretextual, and that the same animus carried into his 2025 and 2026 conduct, no case clearly establishes that a police chief's response to an out-of-state extradition question, or a decision not to reopen a matter the District Attorney already declined to prosecute, violates equal protection. Discretionary, individualized decisions of that kind are exactly what qualified immunity protects.[42]

Independently, nothing pled plausibly shows pretext. Every racial or national-origin remark in this Complaint is Fisher's, a private citizen's, never Griffin's, and Plaintiffs do not impute her bias to him.[43] Griffin's stated 2023

---

[40] Doc. 1 ¶ 44.
[41] *Iqbal*, 556 U.S. at 676.
[42] *Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005); *DeShaney v. Winnebago County*, 489 U.S. 189 (1989).
[43] Doc. 1 ¶¶ 44, 48.

reason, that Fisher could sue the City, is race-neutral on its face.[44] His January 2025 statements are accurate descriptions of the warrant's own extradition parameters, and his unprompted written correction a week later cuts against an inference of concealment rather than toward one.[45] And the 2026 "participation or approval" allegation rests entirely on information and belief, expressly disclaiming that Griffin authored any of outside counsel's letters.[46] That is the conclusory pleading *Iqbal* forecloses at this stage.

### 2.3 The only actual charging decision was the District Attorney's.

The only charging decision in this case belongs to the Fulton County District Attorney, an independently elected office with no reporting relationship to Milton, made in 2023 after "a thorough review from both an internal affairs and a criminal investigations perspective."[47] Guaracino remaining a Georgia resident does not create a comparator problem for Griffin; it removes one.[48] Nobody, Plaintiffs included, ever sought a warrant against Guaracino. The only warrant anywhere in this record exists because Plaintiffs applied for one against Fisher, through the citizen-warrant process, in 2025, a process MPD does not run and Griffin did not control. Asking Griffin to have independently pursued Guaracino, on his own initiative, after Plaintiffs themselves never sought a warrant against him, is not a request for equal treatment.

[44] Doc. 1 ¶¶ 18, 45.
[45] Doc. 1 ¶ 29.
[46] Doc. 1 ¶¶ 32, 34, 46.
[47] Doc. 1 ¶ 22.
[48] Doc. 1 ¶ 36.

The December 2025 civil judgment does not change this.[49] A civil judgment is decided by a preponderance of the evidence: more likely than not. A criminal charge requires proof beyond a reasonable doubt, a far higher standard. Winning a civil case against Fisher years later says nothing about whether the District Attorney's 2023 declination was correct, and it gives MPD no new basis to reopen a matter the District Attorney already reviewed and declined to prosecute. Plaintiffs pursued exactly the track the District Attorney and MPD identified for them in 2023, and won. That is the system working the way Griffin and the District Attorney said it would in 2023. It is not evidence that Chief Griffin's 2025 or 2026 conduct was discriminatory.

The prosecutorial decision belongs to the District Attorney, not to MPD and not to Chief Griffin.[50] Plaintiffs never explain why a municipal police department would reopen an investigation into conduct the County's own elected prosecutor already reviewed and declined to charge. Nor do Plaintiffs identify anything a reopened investigation could turn up that the 2023 review did not already have before it. Plaintiffs' own pleading confirms this: when they went back to MPD after the civil judgment, they asked it to reassess the matter in light of "the evidence previously supplied,"[51] the same thumb drive and recordings Plaintiffs had already given Lieutenant Noblett in June 2023.[52] The

[49] Doc. 1 ¶ 30.
[50] Doc. 1 ¶ 22.
[51] Doc. 1 ¶ 31.
[52] Doc. 1 ¶ 21.

Complaint alleges no new evidence, no new witness, and no new fact developed after 2023 that the District Attorney has not already considered. A civil judgment entered years later, under a lower burden of proof, is none of those things.

Because Plaintiffs have not plausibly pled that Griffin personally acted with discriminatory purpose, and because no clearly established law required him to act otherwise, Chief Griffin is entitled to qualified immunity, and Count I should be dismissed.

### 3. The City cannot be liable under *Monell* on Count II.

A municipality is liable under Section 1983 only when its own policy, custom, final-policymaker decision, or ratification is the moving force behind a constitutional injury; respondeat superior is not enough.[53] Plaintiffs plead three theories in the alternative: ratification, a final-policymaker decision, and settled custom.[54] All three share the same defect.

#### 3.1 The City was never the moving force behind Griffin's extradition decision.

Chief Griffin's January 2025 response was his own, on-the-spot decision, made from his own City email account the same day the question came in. Nothing pled shows the City directing how he should handle it, compelling it through Council or Charter authority, or even knowing about it until after he

---

[53] *Monell*, 436 U.S. at 690-94; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986).
[54] Doc. 1 ¶ 52.

had already responded.[55] Whichever attribution theory Plaintiffs use, the City cannot be the moving force behind a decision it did not make, did not direct, and did not know about until after the fact.[56] Plaintiffs' own causation allegation requires exactly this kind of municipal knowledge and adoption. They plead that the City's "authorized adoption or ratification" "was the moving force" behind the alleged violation.[57] Nothing pled satisfies that standard as to Chief Griffin's January 2025 conduct, because nothing pled shows the City adopted or even knew of it before he acted.

**3.2 Ratification fails.**

Ratification requires an authorized final policymaker who had an opportunity to review the challenged decision and agreed with both the decision and its stated basis; silence, a failure to discipline, or subordinate acquiescence is not enough.[58] Plaintiffs plead that City Manager Krokoff reviewed the matter with Chief Austin, was briefed on the City's position, and continued his analysis after Plaintiffs complained, and that the 2026 correspondence culminated in a stated "final position."[59] But Plaintiffs' own pleading identifies what was reviewed and adopted: extradition parameters, "the matter was viewed as civil," and a matter the City says it already reviewed, the same neutral basis stated

[55] Doc. 1 ¶¶ 28-29.
[56] *Monell*, 436 U.S. at 690-94.
[57] Doc. 1 ¶ 57.
[58] *Garvie v. City of Fort Walton Beach*, 366 F.3d 1186, 1189 (11th Cir. 2004).
[59] Doc. 1 ¶¶ 26, 53.

throughout this record.[60] Ratification requires the policymaker to have known of and endorsed an unconstitutional basis, not merely an outcome reached for a stated, race-neutral reason.[61] Nothing pled shows any policymaker was told, or came to believe, that the real reason was race or national origin, and endorsed that. Plaintiffs' own pleading also concedes the theory is asserted only "to the extent discovery establishes approval by an official … possessing final policymaking authority," meaning it names no policymaker and is not pled yet.[62]

Worth noting: the 2026 correspondence Plaintiffs point to is outside litigation counsel responding to a demand from Plaintiffs' own counsel. Plaintiffs' February 11, 2026 renewal was itself made "through counsel."[63] A lawyer declining a pre-suit demand and explaining why it is not a policymaker reviewing and endorsing a subordinate's earlier decision is ordinary adversarial correspondence.

### 3.3 The final-policymaker theory fails.

Final-policymaker authority requires unreviewable authority over the specific subject matter at issue, not seniority or title.[64] Plaintiffs plead that Milton's Charter vests governmental authority in the City Council, makes the

---

[60] Doc. 1 ¶¶ 22, 28, 33.
[61] *Salvato v. Miley*, 790 F.3d 1286, 1296 (11th Cir. 2015); *Matthews v. Columbia County*, 294 F.3d 1294, 1297-98 (11th Cir. 2002).
[62] Doc. 1 ¶ 54.
[63] Doc. 1 ¶ 32.
[64] *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123-27 (1988); *Pembaur*, 475 U.S. at 480-81.

City Manager the chief administrative officer, and subjects department directors, including the police chief, to that supervision.[65] Plaintiffs concede the point themselves: the Charter provisions "do not, by themselves, prove that Griffin or Krokoff possessed unreviewable final policymaking authority over the precise police-service disposition challenged here," and the theory is pled only on information and belief that some unidentified "official or governmental body possessing final authority" acted.[66] A theory that names no final policymaker, and concedes it cannot yet identify one, does not plausibly plead one.

The Eleventh Circuit treats structurally identical officers the same way. A city manager who reports to an elected council is not a final policymaker for decisions the council retains authority to review, even where the manager exercises real day-to-day control; whether an official counts as a final policymaker is a question of state and local law, not of practical influence.[67] Griffin and Krokoff sit in that same structural position under Milton's own Charter.[68]

---

[65] Doc. 1 ¶ 53.
[66] Doc. 1 ¶ 55.
[67] *Scala v. City of Winter Park*, 116 F.3d 1396, 1399-1402 (11th Cir. 1997); *Quinn v. Monroe County*, 330 F.3d 1320, 1325-26 (11th Cir. 2003).
[68] Doc. 1 ¶ 53.

### 3.4 The custom theory fails.

A municipal custom must be so widespread and settled that it carries the force of law, and it cannot rest on isolated incidents within a single dispute.[69] Plaintiffs concede as much: they "do not rely on repetition within one neighbor dispute, standing alone, to establish a municipal custom."[70] What is left is the same 2023 background evidence already doing work in the qualified-immunity argument above, relabeled a "pattern." Count II adds no new facts to Count I. There are only four institutional acts anywhere in this record: Austin's 2023 declination, Krokoff's 2023 review, the October 2024 Pereira/Krokoff response, and the 2026 outside-counsel letters.[71] Three legal theories asserted over the same four facts do not add up to a plausible custom claim.

A custom claim also requires a pattern permanent and well settled enough to put policymakers on constructive notice. A few episodes confined to one neighbor dispute, spread across years, is the opposite of that.[72]

Because none of the three *Monell* theories is plausibly pled, and because none can satisfy the moving-force requirement common to all three, Count II should be dismissed.

---

[69] *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986); *Craig v. Floyd County*, 643 F.3d 1306, 1310 (11th Cir. 2011).
[70] Doc. 1 ¶ 56.
[71] Doc. 1 ¶¶ 22, 26, 33-34, 53.
[72] *Grech v. Clayton County*, 335 F.3d 1326, 1330 n.6 (11th Cir. 2003) (en banc); *Cuesta v. School Bd. of Miami-Dade County*, 285 F.3d 962, 967 (11th Cir. 2002).

## Conclusion

For these reasons, Defendants ask the Court to dismiss the Complaint. Both counts should be dismissed with prejudice under Rule 12(b)(1) for lack of subject-matter jurisdiction. In the alternative, Count I should be dismissed under Rule 12(b)(6) because Griffin is entitled to qualified immunity, and Count II should be dismissed under Rule 12(b)(6) because no *Monell* theory is plausibly pled.

Respectfully Submitted,

/s/ J. Scott Key
J. Scott Key
Ga. Bar No. 416839
*Attorney for Defendants*

## Certificate of Compliance

I certify that this brief has been prepared in Times New Roman, 14-point font, one of the font and point selections approved by the Court in Local Rule 5.1(B).

Respectfully Submitted,

/s/ J. Scott Key
J. Scott Key
Ga. Bar No. 416839
*Attorney for Defendants*

J. Scott Key, LLC
199 West Jefferson Street
Madison, GA 30650
(678) 610-6624
scott@scottkeylaw.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| Sellathurai ("Ganesh") Sriganesha and Sangeetha Sriganesha,<br><br>Plaintiffs,<br><br>v.<br><br>City of Milton, Georgia; and Jason Griffin, in his individual capacity,<br><br>Defendants. | Case No.:<br>1:26-cv-4820 |

**Certificate of Service**

I certify that I have served an accurate and true copy of the foregoing Brief in Support of Defendants' Motion to Dismiss via U.S. Mail upon:

Sellathurai Sriganesha
Sangeetha Sriganesha
315 Eagles Pass
Milton, Georgia 30004

This the 8th day of September, 2026.

Respectfully Submitted,

/s/ J. Scott Key
J. Scott Key
Ga. Bar No. 416839
*Attorney for Defendants*

J. Scott Key, LLC
199 West Jefferson Street
Madison, GA 30650
(678) 610-6624
scott@scottkeylaw.com