FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

OCT 13 2026

KEVIN P. WEIMER, Clerk
By: DS Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| SELLATHURAI ("GANESH") SRIGANESHA and SANGEETHA SRIGANESHA,<br>Plaintiffs,<br><br>v.<br><br>CITY OF MILTON, GEORGIA; and JASON GRIFFIN, in his individual capacity,<br>Defendants. | Civil Action No.<br>1:26-cv-04820-SEG |

# PLAINTIFFS SELLATHURAI ("GANESH") SRIGANESHA AND SANGEETHA SRIGANESHA'S RESPONSE AND MEMORANDUM IN OPPOSITION TO DEFENDANTS' RENEWED MOTION TO DISMISS FIRST AMENDED COMPLAINT [DOC. 11]

## I. INTRODUCTION

We are Sellathurai ("Ganesh") Sriganesha and Sangeetha Sriganesha, the plaintiffs in this case. We appear without an attorney and jointly submit this response and memorandum in opposition to Defendants' Renewed Motion to Dismiss [Doc. 11]. References to the FAC are to the First Amended Complaint [Doc. 8].

Our claim is that the City of Milton and Chief Jason Griffin intentionally denied us equal treatment in municipal police services because of our race and national origin, while providing those same services to our white neighbor, Paula

Fisher, on her requests concerning the same events. The services at issue are response, investigation, evidence handling, detective assignment, information, and command review. FAC ¶¶ 1, 5, 50, 55. We are not asking this Court to order Paula Fisher's arrest, extradition, investigation, or prosecution. The distinction matters: there is no private right to have someone prosecuted, but the government may not administer the protective services it provides on a racially discriminatory basis. DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 197 n.3 (1989).

The FAC describes specific differences in police assistance, evidence handling, information, and command review between our family and our white neighbor. It also describes Griffin's own involvement and the City officials' authority over the services at issue. We ask the Court to consider those allegations together, rather than reduce the entire case to a disagreement about whether Fisher should have been charged.

Some descriptions in the FAC require correction, as explained below. If the Court finds the FAC insufficient, we request leave to amend rather than dismissal with prejudice.

## II. THE ALLEGATIONS RELEVANT TO THIS MOTION

We are United States citizens of Sri Lankan origin. FAC ¶ 8. Our dispute with Fisher began in March 2023, when Fisher cut trees located on our property.

The FAC alleges that MPD offered assistance to Fisher before the cutting without first contacting us, treated our objections as civil, and later handled our complaints differently from hers. FAC ¶¶ 12–31. Griffin entered the decision chain as a captain in March 2023 and became Chief in December 2023. FAC ¶¶ 10, 16–19.

In May 2023, Griffin was present when we described Fisher's statements about our race, accents, immigration status, citizenship, and home ownership, and explained why we believed those statements had affected MPD's treatment. FAC ¶ 22. The FAC alleges that Griffin then said MPD would not provide information needed for the citizen-warrant process because Fisher could sue the City. During the same period, an officer checked our court activity, conferred with Griffin, and reported information to Fisher. FAC ¶¶ 23–25. A lieutenant later wrote that the only detective follow-up he could recall concerned Fisher's complaints, while many calls between the households existed only as dispatch notes. FAC ¶ 27.

In February 2024, Griffin personally researched MPD's records, answered Fisher, and sent her a copy of a report Ganesh had filed in January 2024. During the same week, he told Ganesh that the same report was civil, "Unfounded," and not assigned to a detective. FAC ¶ 37. Ganesh's separate February 2024 complaint concerning our mail Fisher had obtained unlawfully, Case No. 24-00334, was later reviewed by Captain Barstow, who interviewed our former attorney and left it

classified "Unfounded" on jurisdictional and legal grounds. FAC ¶ 39. The FAC describes the February 21 statement as concerning Case No. 24-00334; the proposed amendment corrects that description to the January 2024 report. The complaints had different subjects, and the later review of the mail complaint did occur. We rely on this episode as part of the overall comparison of services, not as proof that the two complaints were identical or that no one ever reviewed Ganesh's complaints.

In March 2024, Griffin placed "all facets" of Ganesh's matters with a captain answering to him and referred internally to the "why" behind MPD's handling. In July 2024 we expressly complained of racial discrimination. Griffin responded on August 6, 2024 that MPD had found no employee misconduct. FAC ¶¶ 38, 40. Those events preceded the two-year limitations cutoff and are relevant principally as background to the later decisions.

The FAC identifies four events after August 25, 2024. First, in October 2024, online posts identified Ganesh, disclosed our home address, and generated comments about shooting him and bringing guns to our home. We reported the comments and told senior City officials that two minor children lived there. A sergeant wrote that CID would review the information; no detective contacted us.

City Manager Steven Krokoff personally responded, characterized the broader dispute as “blame-shifting,” and declined further engagement. FAC ¶¶ 41–42.

Second, in January 2025, Ganesh wrote to Griffin after a magistrate issued a warrant against Fisher. His email concerned execution of the warrant and also asked how MPD knew she had moved to Florida. Griffin initially said Fisher herself had told an officer. After Ganesh asked for details, Griffin withdrew that statement and apologized for having assumed it. FAC ¶ 43. For the claim asserted as to that event, Ganesh challenges only the allegedly unequal handling of his own request for information, not the warrant’s extradition restrictions or MPD’s failure to execute it.

Third, in January 2026, we reported messages containing racial and immigration insults and references to our children. An officer classified the report as Harassing Communications and said it would be sent to CID for review and follow-up. No detective contacted us. FAC ¶ 45. The proposed amendment corrects the FAC’s assertion that CID closed the report: the more precise allegation is that no result was communicated. This response does not rely on an established closure date or a documented CID decision.

Fourth, in February–April 2026, we and our former attorney corresponded with the City about the December 2025 civil judgment, MPD’s earlier statements,

and what evidence MPD had considered. The City declined a criminal investigation, and counsel ultimately announced the City's final position, copying Griffin and Krokoff. FAC ¶¶ 44, 46–49. The February letter sought an arrest warrant; we do not dispute that. We rely only on the handling of our separate questions and request for an explanation, to the extent the Court finds those matters separable from the request for enforcement against Fisher.

The proposed amendment also corrects several descriptions that we do not rely on here. The Internal Affairs memorandum records Fisher's statement to the responding officer that Ganesh "was here on a work visa and just got his citizenship a couple months ago"; it is not the source of the particular "Indians on a work visa" and "heavy accent" quotations attributed to it in FAC ¶¶ 2 and 11. The proposed amendment distinguishes our account of the recordings from the memorandum's actual contents. The August 2023 arrest report recorded Ganesh's statements that the phone was not working and not recording; it did not independently establish those facts as the officer's findings. The later surveillance report did not document corroborating witnesses or footage of that particular incident as the FAC suggested. The October 2024 record reflects review by a sergeant and supervisor, rather than an established CID disposition. Finally, the February 2026 attorney letter offered video upon request; it did not identify the

June 2023 thumb drive as FAC ¶ 46 suggested. These corrections require amendment; a response brief is not a substitute for correcting the complaint.

## III. THE STANDARDS THE COURT SHOULD APPLY

Defendants expressly present a facial jurisdictional challenge. Doc. 11-1 at 5–6. The Court therefore accepts well-pleaded allegations as true when deciding standing. Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., 524 F.3d 1229, 1232–33 (11th Cir. 2008). For Federal Rule of Civil Procedure 12(b)(6), the FAC must allege facts supporting a reasonable inference of liability. Legal conclusions alone are insufficient, but the Court draws reasonable inferences from the factual allegations in the plaintiff's favor. Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009).

A pro se pleading receives liberal construction, while remaining subject to ordinary pleading requirements. Haines v. Kerner, 404 U.S. 519, 520–21 (1972). Defendants argue that the FAC's organization and our earlier representation in the separate civil dispute should diminish that consideration. Doc. 11-1 at 6–7. Neither changes the fact that we are unrepresented in this action.

Qualified immunity may be decided on a motion to dismiss. We must plausibly allege both a constitutional violation by Griffin and a right clearly established at the time of his conduct. We do not ask the Court to postpone

immunity merely because discovery has not begun. Our position is that the pleaded intentional racial discrimination, properly understood, satisfies those requirements, or can be pleaded more specifically through amendment.

## IV. ARGUMENT

### A. The standing ruling should distinguish our own unequal treatment from a demand to prosecute Fisher.

We accept the rule that a private citizen lacks a judicially cognizable interest in another person's prosecution or nonprosecution. Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973). The Eleventh Circuit recently applied that rule in Peden v. Stephens, No. 24-10178, slip op. at 17–18 (11th Cir. Aug. 19, 2026), where the plaintiffs claimed that a county official influenced the district attorney not to prosecute the official's wife. An equal-protection label did not confer standing. The court directed dismissal of that claim without prejudice.

The FAC identifies a different personal injury: intentionally inferior treatment of our family's own requests for municipal police services because of race and national origin. FAC ¶¶ 5, 55, 70–71. An individual who personally experiences discriminatory treatment can have a concrete injury even when it is intangible. Sierra v. City of Hallandale Beach, 996 F.3d 1110, 1113 (11th Cir. 2021). We are not asserting only offense at someone else's treatment. We allege

discriminatory treatment of requests that we made concerning our home, safety, evidence, and information.

The October 2024 safety report is the clearest example. Ganesh's identity and our address appeared with comments about guns and shooting him. We requested police assistance for our household. The alleged injury is the treatment of that request, not an entitlement to have Fisher or a commenter convicted. The January 2026 report similarly concerned communications directed at our household. Defendants do not challenge standing for those two events and acknowledge that the services formulation can apply to disparities experienced directly. Doc. 11-1 at 8. The Court should analyze those claims independently of the January 2025 warrant and 2026 reopening issues.

The two disputed events require a narrower analysis. In January 2025, Griffin could answer Ganesh's question about the source of MPD's information regardless of whether interstate extradition was permitted. The FAC contrasts the unsupported statement Griffin gave Ganesh with his personal records research before answering Fisher. FAC ¶¶ 37, 43. We do not assert a general constitutional right to a mistake-free response. We allege that the difference in handling resulted from race, as part of the course of treatment described in FAC ¶¶ 58–60. Whether

those facts support that inference is a merits question separate from whether a warrant should have been pursued.

The 2026 correspondence is closer to the prosecution line. Our attorney asked for a warrant, and we do not seek review of the refusal of that request. The potentially separate issue is the allegedly unequal handling of our questions about MPD's prior explanations and the evidence it had considered. FAC ¶¶ 47–49. If the Court concludes that this asserted injury is inseparable from the request to investigate or prosecute Fisher, Peden requires dismissal of that theory without prejudice. It does not require dismissal of our independent safety-service claims.

The FAC seeks compensatory and nominal damages for completed unequal treatment. FAC ¶¶ 70–71. Nominal damages can redress a completed violation of a legal right. Uzuegbunam v. Preczewski, 592 U.S. 279, 292 (2021). That rule satisfies redressability if a cognizable personal injury is alleged; it does not manufacture an injury from nonprosecution or otherwise avoid Peden. We ask the Court to determine which injury is alleged for each event, rather than dismiss the entire action because some correspondence also requested action against Fisher.

**B. The equal-protection claim requires consideration of the factual comparisons and Griffin's own conduct.**

**1. The complaint alleges purposeful unequal treatment, not merely unsatisfactory service.**

The governing requirement is intentional discrimination: action because of race or national origin, rather than merely an adverse result. Iqbal, 556 U.S. at 676–77. A mistake, a delayed reply, or disagreement with a police judgment would not by itself establish that claim. Nor does Fisher's private bias automatically become Griffin's bias. The inference asserted here rests on the sequence of events, service comparisons, Griffin's knowledge and participation, and the explanations given for the different treatment. FAC ¶¶ 22–25, 27–31, 37–43, 58–60.

Discriminatory purpose can be shown through circumstantial evidence, including historical background, the sequence of events, and departures from ordinary procedures. Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 266–68 (1977). Here, the allegations include Griffin's knowledge of our discrimination concerns; his stated concern that Fisher might sue the City; information researched and relayed to Fisher while information needed by us was withheld; a lieutenant's account of detective follow-up favoring Fisher's complaints; and Griffin's personal research for Fisher compared with the assumption he gave Ganesh in January 2025. Later safety reports allegedly

produced no detective contact despite assurances of CID review. And in 2026, after we obtained the judgment MPD had said in 2023 was the precondition to its acting, counsel returned to the 2023 survey rationale, did not address the video MPD had held since June 2023, and, in answer to our questions about what MPD had considered, declared the April 17 letter the City's final position. FAC ¶¶ 18, 44, 47–48, 60. Those allegations must be considered together.

Notice of a discrimination complaint is not proof of discrimination. Griffin's reference to an unstated "why" is likewise not a racial admission. Both bear on context, but we rely on the actual comparisons as well. The corrections described above also matter: the arrest and surveillance reports should not be used to claim that officers established facts they merely recorded as statements, and the October report should not be characterized as receiving no review whatsoever.

Defendants cite Lewis v. City of Union City, 918 F.3d 1213, 1224–28 (11th Cir. 2019) (en banc), concerning comparators similarly situated in all material respects. We recognize that material differences can explain different police responses. The two households' complaints did not always involve the same offense, available evidence, or legal grounds. However, the relevant comparison for the claim asserted here is also the manner in which the same department

received, researched, routed, and answered requests for assistance. A difference in the ultimate charging decision is not our only alleged difference.

For example, Captain Barstow's later review provides a possible nondiscriminatory explanation for the classification of Case No. 24-00334. It does not necessarily answer the other allegations about information sharing, evidence handling, command access, or later safety complaints. We do not ask the Court to disregard that review. We ask it to assess whether the entire pleaded sequence plausibly supports discriminatory administration of services, with the corrected facts considered through an amended complaint if necessary.

**2. Griffin's individual liability must rest on his participation or a sufficient causal connection.**

42 U.S.C. § 1983 does not impose individual liability simply because Griffin supervised MPD. Each official is liable for his own actions. Iqbal, 556 U.S. at 676. Supervisory liability requires personal participation or a causal connection between the supervisor's conduct and the violation; the standard is demanding. Cottone v. Jenne, 326 F.3d 1352, 1360–61 (11th Cir. 2003).

The January 2025 response was Griffin's own. FAC ¶ 43. The FAC also alleges, on information and belief supported by the circumstances of the correspondence, that Griffin made, approved, or maintained the 2026 disposition.

FAC ¶¶ 46–49, 56. The request was addressed to him, concerned a police function he directed, was answered for MPD, and concluded with the final-position letter copied to him. Those facts support the requested inference of participation, although being copied on an email alone would not suffice. We rely on his alleged role in deciding the response, not mere after-the-fact awareness.

The FAC's connection between Griffin and the October 2024 handling is less direct. It alleges that he had already centralized all of Ganesh's matters under one commander, personally dealt with prior assignment decisions, and received the discrimination complaint before the later safety report produced no detective contact. FAC ¶¶ 37–42, 56. We submit that these facts support an inference of a continuing command-level approach to our requests. We recognize, however, that assigning a point of contact and knowing of prior complaints do not, standing alone, prove that he directed a constitutional violation.

If that connection is insufficiently pleaded, amendment is the appropriate request. The prepared proposed amendment identifies the October 2024 safety requests sent to Griffin, including the City Manager's forwarding of the comments, and distinguishes the sergeant's recorded disposition from Griffin's later handling of the requests. Those additional allegations are proposed amendments, not facts that this brief asks the Court to insert into the FAC. As to January 2026, we do not

rest an independent individual-capacity claim on Griffin's title or assume he personally decided the report. That event remains part of the municipal claim and the background to the other treatment.

**C. Qualified immunity should be evaluated against the alleged discriminatory administration of existing police services.**

Defendants describe the right as one to compel enforcement, extradition, or prosecution. We assert no such right. The alleged right is to have existing protective services administered without intentional discrimination based on race or national origin. DeShaney expressly distinguishes the absence of an affirmative due-process duty to protect from the prohibition on selectively denying protective services to disfavored minorities. 489 U.S. at 197 n.3. Although that observation was not a holding on an equal-protection claim, it directly addresses the distinction relevant here.

The Eleventh Circuit has long recognized that intentional racial discrimination violates clearly established equal-protection rights. Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1478–79 (11th Cir. 1991). Brown concerned racially discriminatory discharge of a police officer, not the specific service decisions here. We therefore do not treat it as a factually identical case. Read with DeShaney, it supports fair warning that an official may not deliberately give

residents inferior protective services because they belong to a disfavored racial group.

Qualified immunity requires sufficient specificity. It does not invariably require an earlier decision involving the identical act. *Hope v. Pelzer*, 536 U.S. 730, 739–41 (2002). The relevant alleged conduct is deliberate racial discrimination in the handling of an identified resident's requests, not simply deciding whether a report warrants a detective. An official may reasonably conclude that a complaint is civil, that evidence is insufficient, or that no charge is available. The argument here is that he cannot make the service decision because of the resident's race.

Foster v. Echols Cnty. Sch. Dist., No. 24-12144, slip op. at 9–12 (11th Cir. Mar. 18, 2026), illustrates the distinction. The court held that refusing to perform a contract because of the contracting party's race was unlawful with obvious clarity, despite the absence of a materially identical case. Foster involved 42 U.S.C. § 1981 and contractual rights, not police services. We cite it for its application of the fair-warning principle, not as authority that created a police-service right in 2026 or retroactively established one for earlier conduct.

We recognize that immunity is not defeated by a conclusory assertion of racial motive. If the Court finds the FAC's factual allegations insufficient to

support purposeful discrimination or Griffin's personal connection to a timely event, that deficiency must be addressed. But the inquiry should not assume a nondiscriminatory classification decision and then conclude that no case requires a particular assignment. Accepting the adequately pleaded discriminatory conduct as true, we submit that the preexisting prohibition on racially discriminatory protective services gave fair warning. Alternatively, we request leave to clarify the facts before dismissal with prejudice.

**D. The municipal claim requires a separate analysis of final policymaking authority and the decisions alleged.**

The City is not liable simply because it employed Griffin or other officers. The alleged constitutional injury must be caused by municipal policy, including a deliberate decision by an official possessing final policymaking authority over the relevant function. Pembaur v. City of Cincinnati, 475 U.S. 469, 480–83 (1986). Final discretion to decide a particular case is not automatically final authority to establish policy. We accept that distinction.

The FAC identifies more than a supervisor's title. It sets out Milton, Georgia, Code of Ordinances § 28-20(a), which gives the Chief authority, under the City Manager's general direction, to direct police services and establish departmental policies and directives. It also identifies Milton, Georgia, City

Charter §§ 3.25, 4.10(d), and 3.28 and Milton, Georgia, Code of Ordinances § 2-136 concerning the City Manager's supervision and the Council's dealings with employees through him. FAC ¶¶ 63–65. Our theory is pleaded in the alternative: the challenged services were administered through decisions of Griffin or Krokoff within the function over which the applicable law gave final policymaking authority. FAC ¶¶ 65–68.

Defendants contend that Milton, Georgia, Code of Ordinances § 28-20(a) places policy authority for the relevant police function with Griffin, rather than Krokoff. Doc. 11-1 at 20–21. If the Court adopts that reading, it should then consider the allegations concerning Griffin's exercise of that authority; it should not reject all of his decisions solely because they concern particular residents. Pembaur allows a single decision to constitute municipal policy when made by the official authorized to establish policy concerning that action. Pembaur, 475 U.S. at 480–83. In Cooper v. Dillon, 403 F.3d 1208, 1222–23 (11th Cir. 2005), a police chief's deliberate enforcement decision supported municipal liability because he possessed the relevant final policymaking authority.

Cooper does not make every decision of every chief municipal policy. The local-law delegation and the nature of the decision still control. Here, the FAC alleges a command-level approach to our family's requests, including Griffin's

centralized handling of all matters, review of the discrimination complaint, and later dispositions. FAC ¶¶ 38, 40, 56, 68. We submit that these allegations, together with the specific policy authority identified in the ordinance, plausibly invoke the single-policymaker theory. If they do not adequately distinguish implementation of existing policy from a policy choice, we request leave to clarify that distinction.

The alternative City Manager theory likewise does not rest solely on generalized oversight. The FAC alleges that Krokoff personally undertook review, prescribed a process for considering the tree dispute, instructed Griffin concerning the continuing matters, and personally responded to the October 2024 safety escalation. FAC ¶¶ 20, 24, 26, 38, 42, 66–67. His own October response is a timely act. Whether he held final policy authority for that service function must be determined from the Charter and Code read together, not merely from the fact that he could supervise employees.

Nor is the absence of an actual reversal sufficient by itself. Finality depends on legally available review and authority, not just whether someone chose to exercise it. City of St. Louis v. Praprotnik, 485 U.S. 112, 124–27 (1988) (plurality opinion). However, the Eleventh Circuit has cautioned that identifying and proving a final policymaker is an evidentiary standard, not a requirement to prove the

matter in the complaint. Hoefling v. City of Miami, 811 F.3d 1271, 1279–80 (11th Cir. 2016). The FAC provides the governing provisions and the conduct claimed to be municipal action. At this stage we request consideration of those factual allegations and alternative theories, rather than a requirement that we already prove the City's internal allocation of authority.

To the extent the FAC also asserts ratification, we acknowledge that a final policymaker must approve the subordinate's decision and its basis. Praprotnik, 485 U.S. at 127. Merely receiving an accusation of discrimination, failing to reverse a decision, or being copied on correspondence does not establish approval of a discriminatory basis. The stronger pleaded theory is the policymakers' own participation in and direction of the challenged course of services. If the Court finds the allegations insufficient to establish ratification, that should not substitute for analysis of the direct-decision theory.

Finally, the City cannot claim Griffin's qualified immunity. Owen v. City of Independence, 445 U.S. 622, 638 (1980). Cooper illustrates that individual immunity and municipal liability can produce different outcomes. Cooper, 403 F.3d at 1220–23. We must still allege an underlying constitutional violation and a municipal policy that caused it. But a finding that the right was not clearly established for Griffin would not, without more, resolve Count II.

**E. Earlier events remain relevant, and the alternative tolling allegation should be addressed on its actual scope.**

This action was filed on August 25, 2026. FAC ¶ 51. The FAC identifies the October 2024, January 2025, January 2026, and February–April 2026 events as occurring within the two-year period. FAC ¶ 52. We do not argue that a later similar decision automatically revives an earlier discrete act. Earlier conduct can nevertheless supply background and comparator evidence for a timely claim. See National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002). Defendants recognize that use. Doc. 11-1 at 25.

FAC ¶ 53 separately invokes O.C.G.A. § 9-3-99 for claims arising from Defendants' treatment of us as victims of the alleged March 2023 property crime. That paragraph identifies the handling of the tree-cutting report, the evidence, information needed for the citizen-warrant process, and related review. It alleges a January 2025 felony warrant arising from that crime and no termination of the charge as of filing. The allegation is not an attempt to toll every later dispute or a separate false-arrest claim merely because the households had an ongoing disagreement.

Harrison v. McAfee, 338 Ga. App. 393, 402, 788 S.E.2d 872 (2016), holds that O.C.G.A. § 9-3-99 can apply to defendants other than the alleged perpetrator when the claim arises from the crime's facts and circumstances. That does not

automatically establish that the statute tolls each federal claim here. The connection to the crime and the facts concerning termination still matter. But Defendants' argument that there is no earlier claim pleaded overlooks FAC ¶ 53 and its incorporation into both counts. FAC ¶¶ 54, 62. We preserve that limited alternative theory. Regardless of its outcome, the Court should separately decide the claims based on the later, timely services.

**F. Any curable pleading deficiencies should be addressed by amendment.**

Federal Rule of Civil Procedure 15(a)(2) directs that leave to amend be freely given when justice requires. Amendment may be denied for undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice, or futility. Foman v. Davis, 371 U.S. 178, 182 (1962). We do not seek amendment merely to repeat the FAC's conclusions. A proposed Second Amended Complaint has been prepared that corrects the descriptions of documents, distinguishes the reports' actual findings from our statements, identifies the specific October requests transmitted to Griffin, and clarifies the scope of the information and review claims.

The proposed changes address Griffin's role in October 2024, the reports' actual dispositions, and the distinction between our treatment and enforcement against Fisher. They retain the same defendants and counts and require approval through a proper request for leave.

A pro se plaintiff ordinarily should receive an opportunity to amend where a more carefully drafted complaint might state a claim; futility remains an exception. Woldeab v. Dekalb Cnty. Bd. of Educ., 885 F.3d 1289, 1291–92 (11th Cir. 2018). We request that opportunity. If the Court grants leave and the corrected complaint supersedes the FAC, Doc. 11 should be denied as moot, without preventing a motion directed to the new pleading.

## V. CONCLUSION

We respectfully request that the Court deny Defendants' Renewed Motion to Dismiss as to our claims. Alternatively, we ask the Court to confine any standing dismissal to the particular theory it reaches, dismiss that theory without prejudice, and permit amendment of any curable pleading deficiencies rather than dismiss the action with prejudice. If leave to file the Second Amended Complaint is granted, we ask that the motion directed to the superseded FAC be denied as moot.

Respectfully submitted this 12 day of October, 2026.

Sellathurai ("Ganesh") Sriganesha
Plaintiff, pro se
315 Eagles Pass
Milton, Georgia 30004
Telephone: (864) 498-9953
Email: ganesh.sellathurai@gmail.com

Sangeetha Sriganesha
Plaintiff, pro se
315 Eagles Pass
Milton, Georgia 30004
Telephone: (864) 252-6658
Email: sangee.ganesh@gmail.com

**CERTIFICATE OF COMPLIANCE**

Pursuant to N.D. Ga. Civil Local Rule 7.1(D), we certify that this response and memorandum have been prepared in Times New Roman 14-point font, as permitted by N.D. Ga. Civil Local Rule 5.1(C), with double-spaced body text.

Sellathurai ("Ganesh") Sriganesha, Plaintiff, pro se

Sangeetha Sriganesha, Plaintiff, pro se

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| SELLATHURAI ("GANESH") SRIGANESHA and SANGEETHA SRIGANESHA,<br>Plaintiffs,<br><br>v.<br><br>CITY OF MILTON, GEORGIA; and JASON GRIFFIN, in his individual capacity,<br>Defendants. | Civil Action No.<br>1:26-cv-04820-SEG |

**CERTIFICATE OF SERVICE**

We certify that on October 12, 2026, we served a true and correct copy of the foregoing Plaintiffs Sellathurai ("Ganesh") Sriganesha and Sangeetha Sriganesha's Response and Memorandum in Opposition to Defendants' Renewed Motion to Dismiss First Amended Complaint [Doc. 11] by depositing it in the United States Mail, first-class postage prepaid, addressed to:

J. Scott Key
J. Scott Key, LLC
199 West Jefferson Street
Madison, Georgia 30650
Counsel for Defendants

A courtesy copy was also sent to scott@scottkeylaw.com.

Sellathurai ("Ganesh") Sriganesha,
Plaintiff, pro se

Sangeetha Sriganesha,
Plaintiff, pro se