IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| Sellathurai ("Ganesh") Sriganesha and Sangeetha Sriganesha,<br>Plaintiffs,<br><br>v.<br><br>City of Milton, Georgia; and Jason Griffin, in his individual capacity,<br>Defendants. | Case No.:<br>1:26-cv-4820-SEG |

**Defendants' Reply in Support of Renewed Motion to Dismiss First Amended Complaint**

Plaintiffs' response is careful and candid. It accepts the law that decides this motion: a private citizen cannot sue over another person's nonprosecution, and notice of a discrimination complaint is not proof of discrimination.[1] It admits that Plaintiffs' February 2026 letter sought an arrest warrant.[2] It also admits that the First Amended Complaint misdescribes several of its own sources.[3]

What the response cannot do is make the First Amended Complaint state a claim under that law. Plaintiffs ask the Court to look past the complaint they filed, to a third complaint no one has seen. The Court should decide the motion on the complaint in front of it.

[1]Doc. 14 at 8, 12.
[2]*Id.* at 6.
[3]*Id.* at 5-7.

## Argument and Citation of Authorities

### 1. Plaintiffs have no standing to challenge MPD's refusal to pursue Fisher.

Plaintiffs "accept the rule that a private citizen lacks a judicially cognizable interest in another person's prosecution or nonprosecution."[4] They try to avoid it by describing the 2026 and January 2025 events as something else. The complaint does not allow it.

Start with 2026. In February, Plaintiffs brought their civil judgment to Chief Griffin. They "asked MPD to consider that judgment together with the previously submitted video in light of its 2023 disposition."[5] MPD's counsel answered that "MPD would not open a criminal investigation or pursue charges."[6] Plaintiffs "challenged that disposition."[7] Counsel called the answer the City's "final position."[8] Plaintiffs admit their February letter "sought an arrest warrant," and they "do not seek review of the refusal of that request."[9]

Plaintiffs now say they challenge only the handling of their "separate questions and request for an explanation."[10] The complaint pleads no separate request. Every message in that exchange concerned whether MPD would go after

---

[4]Doc. 14 at 8.
[5]Doc. 8 at ¶ 46.
[6]*Id.* at ¶ 47.
[7]*Id.* at ¶ 48.
[8]*Id.*
[9]Doc. 14 at 6, 10.
[10]*Id.* at 6, 10.

Fisher. Even Plaintiffs' April 2 letter, which "again raised unequal police treatment," challenged MPD's refusal to act.[11] A question about why MPD would not investigate her is still a question about whether MPD would investigate her.

Plaintiffs supply the rule: "If the Court concludes that this asserted injury is inseparable from the request to investigate or prosecute Fisher, *Peden* requires dismissal of that theory without prejudice."[12] It is inseparable. The equal-protection label does not help. *Linda R.S.* was an equal-protection case, too.[13] So was *Peden*. The plaintiffs there alleged a failure "to provide Mr. and Mrs. Peden the protections of law enforcement and the judicial system."[14] The court still found no standing.[15]

January 2025 is the same. On January 13, a Fulton County magistrate issued a warrant for Fisher. The next day, Plaintiffs asked Griffin "about MPD's handling of the warrant and how MPD knew Fisher had moved to Florida."[16] Plaintiffs now treat the second half of that question as a stand-alone request for information.[17] But both questions came in one email, a day after the warrant issued, about that

---

[11]Doc. 8 at ¶ 48.
[12]Doc. 14 at 10; *see Peden v. Stephens*, 187 F.4th 1371, ___, 2026 U.S. App. LEXIS 25097 at *18-19 (11th Cir. 2026).
[13]*Linda R.S. v. Richard D.*, 410 U.S. 614, 615-19 (1973).
[14] *Peden*, 2026 U.S. App. LEXIS 25097 at *18.
[15]*Id.*
[16]Doc. 8 at ¶ 43.
[17]Doc. 14 at 5, 9; *see* Doc. 8 at ¶ 52.

warrant.[18] Read as pleaded, the question was part of asking MPD to pursue Fisher. *Linda R.S.*, *Leeke*, and *Peden* bar that claim, whatever its label.[19]

Plaintiffs point out that Defendants did not challenge standing for the October 2024 and January 2026 reports.[20] True. Those claims fail on the merits.[21]

The claims based on Paragraphs 43 and 46 through 49 should be dismissed without prejudice for lack of jurisdiction.

### 2. The complaint does not tie Griffin to any timely decision made because of race.

Count I is against Griffin alone, and he answers only for what he did.[22] Plaintiffs agree.[23] Set aside the 2026 reopening request. Three timely events remain. Griffin made none of the decisions in two of them. The third, the January 2025 email exchange, shows no discrimination even if the Court reaches it.

#### 2.1 Others handled the October 2024 and January 2026 reports.

Plaintiffs bring no individual claim against Griffin for the January 2026 report.[24]

---

[18]Doc. 14 at 5.
[19]*Linda R.S.*, 410 U.S. at 619; *Leeke v. Timmerman*, 454 U.S. 83, 86-87 (1981); *Peden*, 2026 U.S. App. LEXIS 25097 at *18-19.
[20]Doc. 14 at 9.
[21]Doc. 11-1 at 10-11, 19-23.
[22]*See Ashcroft v. Iqbal*, 556 U.S. 662, 676-77 (2009); *Cottone v. Jenne*, 326 F.3d 1352, 1360-61 (11th Cir. 2003).
[23]Doc. 14 at 13.
[24]Doc. 14 at 14-15.

In October 2024, Plaintiffs reported threats to MPD. Sergeant Pereira wrote back that CID would review the report. He later told Mr. Sriganesha "by telephone, in substance, that CID had concluded there was no criminal conduct and would take no action."[25] That is the complaint's account. Griffin is not in it. Plaintiffs admit his connection to October 2024 is "less direct," and that the facts they plead about him "do not, standing alone," show he directed a violation.[26]

The response now calls the October record "review by a sergeant and supervisor, rather than an established CID disposition."[27] It also describes new facts about Griffin that would go in a proposed amendment.[28] Neither is before the Court. A brief cannot amend a complaint.[29] Plaintiffs say so themselves: the new facts "are proposed amendments, not facts that this brief asks the Court to insert into the FAC."[30]

### 2.2 The January 2025 email exchange shows only a corrected mistake.

The complaint pleads the whole January 2025 exchange. Griffin answered Mr. Sriganesha's question. He said Fisher had told an officer she moved. "After Plaintiffs asked for the details," Griffin wrote back that "[n]o statement was made

---

[25] Doc. 8 at ¶ 42.
[26] Doc. 14 at 14.
[27] *Id.* at 6.
[28] *Id.* at 14.
[29] *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (summary judgment).
[30] Doc. 14 at 14.

to us by Ms. Fisher stating she has moved to Florida." Then: "I apologize for assuming that earlier."[31]

Griffin made an assumption, was asked about it, corrected it, and apologized. Plaintiffs concede that a mistake "would not by itself establish" their claim. They "do not assert a general constitutional right to a mistake-free response."[32] Their comparator is Griffin's handling of Fisher's emails a year earlier.[33] That was a different request, from a different person, at a different time. It is not a comparator "similarly situated in all material respects."[34]

Plaintiffs ask the Court to view the whole sequence together.[35] That does not help them. Plaintiffs concede that "[n]otice of a discrimination complaint is not proof of discrimination," and that Griffin's reference to an unstated "why" "is likewise not a racial admission."[36] They concede the two households' complaints "did not always involve the same offense, available evidence, or legal grounds," and that "material differences can explain different police responses."[37] Stacking allegations Plaintiffs admit are insufficient does not make a plausible claim that Griffin acted because of race.

---

[31]Doc. 8 at ¶ 43.
[32]Doc. 14 at 9, 11.
[33]*Id.* at 9; Doc. 8 at ¶ 37.
[34]*Cf. Lewis v. City of Union City*, 918 F.3d 1213, 1224-28 (11th Cir. 2019) (en banc).
[35]Doc. 14 at 11-12 (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266-68 (1977)).
[36]*Id.* at 12.
[37]*Id.*

### 2.3 Qualified immunity turns on purpose, and Plaintiffs have not pleaded it.

Plaintiffs cite no case with similar facts. They admit *Brown* is not "a factually identical case" and that the *DeShaney* footnote "was not a holding on an equal-protection claim."[38] They rely instead on *Foster v. Echols County School District* for the rule that some conduct is unlawful with "obvious clarity" even without a case on point.[39] *Foster* does not help them. The officials there did not dispute that the complaint plausibly alleged they refused to honor a settlement because of race. The court accepted that premise and decided only whether the law was clear.[40] It called its holding narrow.[41] And it rested on the text of § 1981 and on binding precedent recognizing the same theory of liability.[42]

Defendants dispute the premise *Foster* took for granted. Plaintiffs concede that "immunity is not defeated by a conclusory assertion of racial motive."[43] As shown above, the complaint pleads a corrected mistake. It does not plead facts showing racial purpose. Without that premise, the general rule against discrimination has nothing to attach to. Courts may not define clearly established law "at a high level of generality."[44] And nothing gave Griffin fair warning that the

[38]Doc. 14 at 15.
[39]*Id.* at 16; *Foster v. Echols Cnty. Sch. Dist.*, 169 F.4th 1291, 1298 (11th Cir. 2026).
[40]*Foster*, 169 F.4th at 1297 n.4.
[41]*Id.* at 1298 n.5.
[42]*Id.* at 1298-99.
[43]Doc. 14 at 16.
[44]*District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (quotation omitted).

conduct actually pleaded, answering an email with a wrong assumption and then correcting it, violated the Constitution. Griffin is entitled to qualified immunity.

**3. No City policymaker made a decision that caused a timely injury.**

Plaintiffs agree that "[f]inal discretion to decide a particular case is not automatically final authority to establish policy."[45] In their words: "We accept that distinction."[46] Neither of their two theories gets past it.

**3.1 The City Manager does not make police policy.**

Who makes final policy is a question of state and local law.[47] Plaintiffs agree the answer comes from Milton's Charter and Code "read together."[48] The Charter makes the City Manager the "chief administrative officer of the city," who directs and supervises every department. The Code then gives the Chief, "[u]nder the city manager's general direction," the power to direct "the administration and operation of all services of the city police department" and to set its "policies, directives, rules and regulations."[49] The City Manager supervises. The Chief runs the police department.

Plaintiffs point to Mr. Krokoff's October 2024 email as a timely policy decision.[50] The complaint says what that email did. Mr. Krokoff "directed

---

[45] Doc. 14 at 17.
[46] *Id.*; *see, e.g., Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-83 & n.12 (1986).
[47] *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988) (plurality op.).
[48] Doc. 14 at 19.
[49] Doc. 8 at ¶ 63.
[50] Doc. 14 at 19.

Plaintiffs to report any criminal activity to the police, and stated that his message was not an invitation to further engagement."[51] He sent them back to the police. He decided nothing about their report.

**3.2 Griffin made no timely decision that was City policy.**

Plaintiffs' fallback theory makes Griffin the policymaker. It fails because none of the timely decisions were his. CID decided the October 2024 report.[52] Plaintiffs do not attribute the January 2026 report to Griffin.[53] The 2026 reopening request is outside the Court's jurisdiction. The January 2025 emails show no constitutional violation, and without one there is no municipal liability.[54]

Nor were Griffin's decisions City policy. One decision becomes municipal policy only when "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."[55] Plaintiffs admit that "*Cooper* does not make every decision of every chief municipal policy."[56] What they plead are dispositions of one family's matters: sending them to one captain,

---

[51]Doc. 8 at ¶ 42.
[52]*Id*.
[53]Doc. 14 at 14-15.
[54]*See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).
[55]*Pembaur*, 475 U.S. at 483 (plurality op.).
[56]Doc. 14 at 18.

answering emails, handling particular reports.[57] They allege no facts showing that Griffin, in any of them, chose a course of action for the City.

Plaintiffs also admit that "[m]erely receiving an accusation of discrimination, failing to reverse a decision, or being copied on correspondence does not establish approval of a discriminatory basis."[58] That ends any ratification theory. And *Hoefling* does not help them.[59] Defendants do not ask Plaintiffs to prove now who holds the City's authority. They ask only that the complaint allege a decision by the official who holds it. It does not.[60]

**4. Events before August 25, 2024 are background only.**

Plaintiffs agree the earlier events are "relevant principally as background."[61] They "do not argue that a later similar decision automatically revives an earlier discrete act."[62] They hold on to one alternative theory: tolling under O.C.G.A. § 9-3-99.[63] But they concede that *Harrison v. McAfee* "does not automatically establish that the statute tolls each federal claim here."[64]

---

[57] *Id.* at 18-19; Doc. 8 at ¶¶ 38, 40, 56, 68.
[58] Doc. 14 at 20.
[59] *Id.* at 19-20.
[60] Plaintiffs also note that the City cannot claim Griffin's qualified immunity. Doc. 14 at 20. Defendants have not argued otherwise.
[61] Doc. 14 at 4.
[62] *Id.* at 21.
[63] *Id.* at 22; Doc. 8 at ¶ 53.
[64] Doc. 14 at 21-22; *see Harrison v. McAfee*, 338 Ga. App. 393, 788 S.E.2d 872 (2016).

It does not toll these claims. Section 9-3-99 reaches a claim that "arises out of the facts and circumstances relating to the commission of such alleged crime."[65] The crime was the tree-cutting on March 15, 2023. The claims Paragraph 53 lists arise from later police decisions about how to respond to it, most made weeks or months afterward.[66] And on Plaintiffs' own pleading, MPD took the matter to the Fulton County District Attorney's Office, which declined to prosecute.[67] Any claim about MPD's handling of the tree-cutting fails on the merits anyway.

**5. Plaintiffs' request to amend is not properly before the Court.**

Plaintiffs ask for leave to file a Second Amended Complaint. They have filed neither a motion nor the proposed pleading.[68] A request for leave buried in a response brief is not properly raised.[69] This Court's Standing Order says the same. When a litigant "seeks court action, the appropriate procedure is to put the request in writing, in the form of a motion."[70] Plaintiffs have also amended once already, after Defendants' first motion to dismiss.[71] A pro se plaintiff ordinarily gets one chance to amend.[72] Plaintiffs had theirs.

---

[65]O.C.G.A. § 9-3-99; *see* Doc. 11-1 at 24.
[66]Doc. 8 at ¶ 53.
[67]*Id.* at ¶ 29.
[68]Doc. 14 at 22-23.
[69]*See Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009); *Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999).
[70]Doc. 7 at 9 (§ II.B).
[71]Docs. 5, 8.
[72]*See, e.g.*, *Woldeab v. DeKalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018).

If the Court is inclined to allow another amendment, Defendants ask that the Court (1) set a deadline; (2) state that this is Plaintiffs' final chance to amend; and (3) bar repleading the theories that fail as a matter of law: the 2026 request to reopen the Fisher investigation, the City Manager theory, and stand-alone claims based on events before August 25, 2024.

## Conclusion

The Court should grant the motion. The claims based on Paragraphs 43 and 46 through 49 should be dismissed without prejudice for lack of jurisdiction. The rest of Count I should be dismissed because Griffin is entitled to qualified immunity. Count II should be dismissed. Events before August 25, 2024 should be treated as background only.

Respectfully submitted,

/s/ J. Scott Key
J. Scott Key
Ga. Bar No. 416839
*Attorney for Defendants*

J. Scott Key, LLC
199 West Jefferson Street
Madison, GA 30650
(678) 610-6624
scott@scottkeylaw.com

## Certificate of Compliance

I certify that this brief has been prepared in Times New Roman, 14-point font, one of the font and point selections approved by the Court in Local Rule 5.1(B), and that it is double-spaced as required by Local Rule 5.1(C)(2).

Respectfully submitted,

/s/ J. Scott Key
J. Scott Key
Ga. Bar No. 416839
*Attorney for Defendants*

J. Scott Key, LLC
199 West Jefferson Street
Madison, GA 30650
(678) 610-6624
scott@scottkeylaw.com

**Certificate of Service**

I certify that I have served an accurate and true copy of the foregoing Defendants' Reply in Support of Renewed Motion to Dismiss First Amended Complaint via U.S. Mail upon:

Sellathurai Sriganesha
Sangeetha Sriganesha
315 Eagles Pass
Milton, Georgia 30004

This the 19th day of October, 2026.

Respectfully submitted,

/s/ J. Scott Key
J. Scott Key
Ga. Bar No. 416839
*Attorney for Defendants*

J. Scott Key, LLC
199 West Jefferson Street
Madison, GA 30650
(678) 610-6624
scott@scottkeylaw.com